```
                    UNITED STATES DISTRICT COURT
                    EASTERN DISTRICT OF LOUISIANA

TRADEWINDS ENVIRONMENTAL              CIVIL ACTION
RESTORATION, INC.

VERSUS                                NO: 06-593

ST. TAMMANY PARK, L.L.C.,             SECTION: "J" (4)
ET AL.
```

### ORDER AND REASONS

Before the Court is defendants' Motion for Partial Summary Judgment. (Doc. 38.) The motion is opposed. For the following reasons the Court finds that the motion should be GRANTED.

### BACKGROUND

Defendant St. Tammany Park, LLC owned an apartment complex in Covington, Louisiana that was damaged by Hurricane Katrina. St. Tammany Park was advised by its insurer, third party defendant Colonial Insurance, to begin mold remediation immediately after the storm. Service Restoration, one of St. Tammany Park's contractors, recommended that plaintiff Tradewinds Environmental Restoration, Inc. ("Tradewinds") perform the mold remediation on the apartment complex. Tradewinds and St. Tammany Park negotiated an agreement to provide emergency remediation and

restoration. Upon signing the agreement, St. Tammany Park paid Tradewinds $20,000 as a deposit.

According to Tradewinds' Chief Operating Manager, Jeffrey Micheli, Tradewinds provided and operated dehumidifiers, air scrubbers, and air movers at the apartment complex from September 6, 2005 through September 15, 2005, in order to facilitate the mold remediation work of Service Restoration, which did not have the equipment or operators necessary. (Doc. 53-9, Micheli Affidavit ¶ 16.) Tradewinds did not have a Louisiana contractor's license or mold remediation license when it entered into the agreement and performed the work.

After completing the work, Tradewinds issued three invoices to St. Tammany Park totaling $245,440.94. St. Tammany Park paid an additional $70,000 on top of the $20,0000 deposit, but has refused to pay the remainder of the invoiced amounts. Tradewinds sued St. Tammany Park and one of its principals, Brian Campbell, in this Court based on diversity jurisdiction, seeking to recover the balance due on its invoices. The Court has entered summary judgment dismissing the claims against Brian Campbell personally. Defendants seek judgment that no contract was entered into, or that no price was agreed upon, or that the contract was an absolute nullity because it was in contravention of a prohibitory law. Although the first two grounds depend upon disputed issues

2

of material fact, the Court finds that the third ground warrants judgment as a matter of law.

## LEGAL STANDARD

Summary judgment is appropriate if "there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). The moving party bears the initial burden of demonstrating the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). If that burden has been met, the non-moving party must then come forward and establish the specific material facts in dispute to survive summary judgment. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 588 (1986). Conclusional allegations and denials, speculation, improbable inferences, unsubstantiated assertions, and legalistic argumentation do not adequately substitute for specific facts showing a genuine issue for trial. *TIG Ins. Co. v. Sedgwick James*, 276 F.3d 754, 759 (5th Cir. 2002)

## DISCUSSION

The following legal premises were outlined recently in a substantially similar case involving Tradewinds in another section of this Court. *See Tradewinds Environmental Restoration, Inc. v. Fresenius Medical Care, N.A., et al.*, Order and Reasons, 2:06-cv-1093, 4-7 (E.D. La. March 20, 2007)(Fallon, J.). The

3

Court finds them equally applicable to this case:

> La. Rev. Stat. §§ 37:2150, et seq., seeks to protect those persons dealing with contractors by providing licensure requirements for contractors performing work within the State. According to § 37:2160, it is "unlawful for any person to engage or to continue in this state in the business of contracting, or to act as a contractor...unless he holds an *active* license as a contractor under the provisions of this Chapter." (emphasis added). Thus, "only a person who *has obtained* a contractor's license from the State Licensing Board for Contractors may be engaged in the contracting vocation in the State of Louisiana." *Hagberg v. John Bailey Contractor*, 435 So.2d 580, 584 (La. App. 3 Cir. 6/29/83), *writ denied*, 444 So.2d 1245 (emphasis added).
>
> A contractor is defined as "any person who undertakes to, attempts to, or submits a price or bid or offers to construct, supervise, superintend, oversee, direct, or in any manner assume charge of the construction, alteration, repair, improvement, movement, demolition, putting up, tearing down, or furnishing labor, or furnishing labor together with material or equipment, or installing the same for any building...for which the entire cost of same is fifty thousand dollars or more when such property is to be used for commercial purposes...." La. Rev. Stat. § 37:2150.1(4)(a). A contractor is further defined to encompass both subcontractors and general contractors, *Id.* at § 37:2150.1(4)(b), and a general contractor includes a party who "contracts directly with the owner." *Id.* at § 37:2150.1(6)(a).
>
> Additionally, La. Rev. Stat. §§ 37:2181, et seq, provides specific licensure requirements for parties performing mold remediation services in order to protect those individuals with whom they do business. Mold remediation is defined as the "removal, cleaning, sanitizing, demolition, or other treatment, including preventive activities, of mold or mold-contaminated matter that was not purposely grown at that location," *id.* at § 37:2182, and includes only those mold-related activities that affect indoor air quality. *Id.* at § 37:2183. Specifically, the mold remediation licensure requirement states:
>
>> Beginning July 1, 2004, no person shall engage in

4

>or conduct, or advertise or hold himself out as engaging in or conducting the business of, or acting in the capacity of a person who conducts mold remediation unless such person holds a mold remediation license as provided for in this Chapter.

*Id.* at § 37:2185(A). Moreover, the statute provides that an applicant for a mold remediation license must meet requirements such as minimum age and education qualifications, board approved course work and training, fees, submission of a license application and insurance certificates for workers' compensation and liability insurance coverage. *Id.* at § 37:2186(B).

Both § 37:2150 and § 37:2180 clearly state that the purpose of these licensing requirements and regulation is protection of the public interest. Section 2150 provides:

>The purpose of the legislature in enacting this Chapter is the protection of the health, safety, and general welfare of all those persons dealing with persons engaging in the contracting vocation, and the affording of such persons of an effective and practical protection against the incompetent, inexperienced, unlawful and fraudulent acts of contractors with whom they contract...

*Id.* at § 37:2150.

Similarly, Section 2181 states:
>The legislature hereby declares that it is in the best interest of the citizens of the state to require the licensure and regulation of those persons who perform remediation.

*Id.* at § 37:2181.

These provisions were specifically enacted so that unqualified individuals operating in professional fields could not injure or mislead the State's citizens. When a contract violates a rule of public order, the contract is "absolutely null." La. Civ. Code. Ann. art. 2030. Furthermore, "[a]ny act in derogation of such laws is an absolute nullity." La. Civ. Code Ann. art. 7. Thus, any contracts made in violation of the State licensing requirements are null and void. *Alonzo v. Chifici*, 526 So.2d 237, 240-43 (La. App. 5 Cir. 4/18/88), *writ denied,* 527 So.2d 307 (relying on Article 7 to nullify renovation agreement between building owner and unlicensed contractor); *Hagberg*, 435 So. 2d at 584-85 (citing *E.L. Burns Co.,*

> *Inc. v. Cashio*, 302 So.2d 297 (La. 1974) and *West Baton Rouge Parish School Board v. T.R. Ray, Inc.*, 367 So.2d 332 (La. 1979) ("Since the licensing provisions for contractors were enacted to protect an interest vital to the public order, whatever contracting agreement entered into by [the contractor] without the benefit of a contractor's license, having been done in contravention of a prohibitory law, is void."); *Executone of Cent. La., Inc. v. Hosp. Svc. Dist. No. 1 of Tangipahoa Parish*, 798 So.2d 987, 993 (La. App. 1 Cir. 5/11/01), *writ denied*, 798 So.2d 116; *Touro Infirmary v. Travelers Prop. Cas. Co. of Am.*, 2007 U.S. Dist. LEXIS 10373, at *11-16 (E.D. La. Feb. 13, 2007) (contract to repair hospital following damage from Hurricane Katrina entirely void as contractor was not licensed in compliance with §37:2150).
>
> Because of the strong public policy reasons underlying the statutes, the licensing rules established by §§ 37:2150, et seq, and §§ 37:2181, et seq, may not be set aside by individuals through private agreement. *See Hagberg*, 435 So.2d at 584 (reasoning that as § 37:2157(A)(2), (B), (C) and (D) carve out specific exceptions to the definition of contractor, the use of the imperative "shall" in § 37:2160(A) requires that those that do not fall within § 37:2157's exceptions may not otherwise avoid § 37:2160(A)'s requirements).

Tradewinds does not dispute that it did not have a license to conduct mold remediation services in Louisiana at the time it performed the work. Tradewinds nevertheless insists that the contract should not be rendered an absolute nullity for two reasons. First, Tradewinds argues that the work it did was not mold remediation. Second, Tradewinds argues that the loosening of enforcement by the Louisiana State Board of Licensing Contractors following the hurricane, the expertise of Tradewinds in matters of mold remediation, and the generally disastrous state of

affairs in the New Orleans area following the hurricane raise a question as to whether Tradewinds' unlicensed activities were in the public interest despite being illegal. The Court concludes that both arguments fail as a matter of law.

As noted above, Tradewinds' own interpretation of the facts indicates that Tradewinds contracted with the property owner to provide and operate dehumidifiers, air scrubbers, and air movers to facilitate the mold remediation work of another company that did not have the equipment or operators. (Doc. 53-9, Micheli Affidavit ¶ 16.) Micheli asserts that these activities were nothing more than moving around equipment and should not be considered mold remediation. However, mold remediation means "treatment, *including preventive activities*, of mold or mold-contaminated matter that was not purposely grown at that location," *id.* at § 37:2182 (emphasis added). Tradewinds contracted directly with the property owner to provide the equipment and operators to dry out water damaged apartment units to prevent mold from proliferating. Tradewinds contends that it provided 300 to 400 pieces of equipment per day and crews of three to eleven operators that frequently worked fourteen hour days to complete the moisture extraction in at least one-hundred units in fourteen buildings. (Doc. 51-2, Statement of Material Facts, ¶ 7.) Asserting that another contractor was hired to

perform mold remediation, while Tradewinds contracted merely to provide the equipment and operators that the mold remediation contractor was unable to provide is an unavailing attempt to circumvent the licensing requirement.

Tradewinds' public policy argument, though more compelling, is ultimately unavailing as well. Tradewinds directs the Court's attention to the affidavit of Charles E. Marceaux, Executive Director of the Louisiana State Board of Licensing for Contractors, which indicates that following Hurricane Katrina the board "decided to delay active and aggressive enforcement of licensure laws pertaining to debris removal and demolition" and mold remediation as a practical matter. Tradewinds argues that the licensing requirement was thus de facto suspended. However, Mr. Marceaux's affidavit is explicit that "the law was still in effect." (Doc. 53-5, Marceaux Affidavit, ¶¶ 8, 9, 11, 16, and 18.) Mr. Marceaux indicates that during this time of relaxed enforcement the board was still enforcing the laws "as it believed necessary if the facts appeared that the actions of a contractor would be detrimental to the public." (*Id*. ¶ 16.) No executive or legislative action had suspended the licensing requirements at the time Tradewinds performed the mold remediation. Although the administrative agency in charge of licensing had decided to monitor rather than enforce, the fact

remains that Tradewinds was prohibited by law from contracting to perform mold remediation at the relevant time. As indicated above, a contract in contravention of a prohibitory law is absolutely void.

Tradewinds suggests that this Court, in light of the unprecedented devastation and need following Hurricane Katrina, should ignore the determinations of the Louisiana legislature and Louisiana caselaw that unlicensed contracting is against the public interest. However, this Court is sitting in diversity, and is bound to follow state law as it exists. Even accepting Tradewinds' argument that "Louisiana Courts have never been called upon in their history to interpret Louisiana law under facts such as are now being presented to this Court" (Doc. 42, Memo in Opp. at 36), this Court's task "when making an *Erie* guess as to how the Louisiana Supreme Court would rule if squarely faced with this issue, is to attempt 'to predict state law, not to create or modify it.'" *Marchesani v. Pellerin-Milnor Corp.*, 269 F.3d 481, 493 (5th Cir. 2001) (footnote citation omitted). This Court has no basis to determine that the best public policy for Louisiana is anything other than that expressly stated in Louisiana's statutes and Louisiana's jurisprudence to date.

## CONCLUSION

Tradewinds' contract to provide mold remediation services

without a license was specifically prohibited by laws intended to protect the public interest, and is therefore absolutely null. Tradewinds is entitled to recover its "actual cost of materials, services and labor," but is "not entitled to an allowance for profit and overhead." *Alonzo v. Chifici*, 526 So. 2d 237, 243 (La. App. 5th Cir. 1988). Although this is a harsh result, Tradewinds has failed to come forward with evidence sufficient to create an issue of material fact that the law can be applied otherwise.

Accordingly,

**IT IS ORDERED** that defendants' Motion for Partial Summary Judgment (Doc. 38) is **GRANTED**.

New Orleans, Louisiana this the 20th day of April, 2007.

_____
CARL J. BARBIER
UNITED STATES DISTRICT JUDGE